Filed 5/16/23  In re M.B. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re M.B., et al., Persons Coming Under the Juvenile Court Law. | B320868 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.B.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 21CCJP04590A-C) |

Appeal from orders of the Superior Court of Los Angeles County, Debra L. Losnick, Judge.  Affirmed.

Law Office of Arthur J. LaCilento and Arthur J. LaCilento for Defendant and Appellant.

Dawyn R. Harrison, County Counsel; Kim Nemoy, Assistant County Counsel; William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

─────────────────────

R.B. (father) appeals from a dispositional and juvenile court exit order in a dependency case removing his three children, M.B., A.B. and S.B from his custody, awarding mother sole physical custody order with monitored visits to father, and terminating the court's jurisdiction.  Father argues that the juvenile court abused its discretion by removing the children from him and awarding custody to mother, and that the court's findings are not supported by substantial evidence.  We find no merit to father's contentions and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**A. The initial encounter, investigation and detention hearing.**

In August of 2021, the Department of Children and Family Services (Department) received a report of a domestic violence incident at mother's and stepfather's home, involving a physical altercation that occurred in the presence of the children.  On September 28, 2021, following an investigation, the Department removed the children from mother and placed them with a foster parent.  The Department considered placing the children with father, but decided such placement would be inappropriate because the children "displayed significant emotional reaction to the concept of having to be placed with father," with whom they

2

had not had any contact for over two years.[1]  The oldest child, M.B., objected to being placed with father, becoming "extremely upset and screamed . . . [that father] 'is an evil, very evil man.' " Although he was aware of the proceeding, father did not request that the Department place the children with him.

On September 30, 2021, the Department filed a petition under Welfare and Institutions Code[2] section 300, alleging that domestic violence between mother and stepfather posed a threat to the children's physical and emotional well-being.

The court held a detention hearing on October 5, 2021. Before the hearing, the Department filed a Last Minute Information with the Court stating that it was changing its recommendation and also seeking detention of the children from father.  The Department stated that "the children do not have a[ ] relationship with their father and have express[ed] that they are afraid of him."  It also reported that, although father represented he had no mental health issues other than seasonal affective disorder, he had in fact been diagnosed with paranoid personality disorder, bipolar disorder and adjustment disorder.

At the hearing, the court adopted the Department's recommendation, finding good cause for detaining the children from both parents.  As to mother, the court found a substantial risk to the physical or emotional health of the children.  The court detained the children from father based on their statements that

---

[1]     At the time of the removal, the children were subject to family law orders that gave mother sole legal and physical custody and provided for father to have professionally monitored visitation.

[2]     Unless otherwise stated, all further statutory references are to the Welfare and Institutions Code.

they were physically abused by him and were frightened to live in his home.  The court ordered monitored visits for both parents.

**B. The first and second amended petitions.**

On October 13, 2021, the Department filed a first amended petition adding new allegations regarding father.  The amended petition alleged that father had an "inclination to bad-mouth the mother and . . . unceasing efforts to prove that mother and others have conspired to ruin him."  The Department further alleged that father had physically abused mother in the children's presence, and that his conduct "is emotionally abusive to the children and has caused the children unreasonable suffering."  The amended petition also included a new count against mother, alleging general neglect for failure to obtain mental health services and treatment for the children.

On November 19, 2021, the Department filed a second amended petition that omitted the count against father.  The second amended petition added a new count alleging that both parents were involved in an "ongoing, high-conflict custody dispute," and that mother's comments disparaging father created a risk of serious emotional harm to M.B., the oldest of the three children.  The Department continued to recommend that the children be detained from both parents "until such time as the parents can receive treatment for their mental health issues, substance abuse, domestic violence and lack of parenting skills."  Following a detention hearing on the second amended petition on November 24, 2021, the court ordered that the children remain in foster care.

**C. The children are returned to mother.**

The court held a trial setting hearing on March 14, 2022.  Prior to that hearing, the Department submitted a Supplemental

4

Report updating the court "as to the services in process and completed by the family." The Department stated that mother and stepfather had made significant progress. It noted that mother had completed a domestic violence class and was participating in individual therapy, and marriage counseling with stepfather. Stepfather had enrolled in a domestic violence program for batterers and was "fully compliant" with that program. In addition, stepfather was submitting clean weekly drug tests, and attending "several [Alcoholics Anonymous] meetings per week." The Department recommended that the court return the children to mother's home "with ongoing Court involvement and Family Maintenance Services in place." The Department also recommended against placing the children with father "due to the children's ongoing vitriolic, anxiety-ridden and volatile feelings the children demonstrate in the presence of their father and paternal relatives." The Department noted that the visits between the children and father had "not improved, and are instead getting worse and worse."

Mother pleaded no contest to the petition and the court sustained a single count against mother.[3] The court ordered the children released to mother under the supervision of the Department subject to mother continuing with her court-ordered programs. The court also ordered the Department to provide to the children, mother and father referrals to a high conflict family reunification therapist, and scheduled a disposition hearing on May 10-11, 2022.

---

[3] The sustained count alleged that the August 2021 domestic violence incident that caused the children to be detained from mother endangered the children's physical health and safety.

**D. The disposition hearing and order.**

The Department continued to monitor both parents' progress. It submitted a Supplemental Report that stated that mother and stepfather continued to participate in their counseling and that mother had sufficiently progressed in her individual therapy such that it was no longer needed. The children's social worker (CSW) had conducted a home visit and met with the children and mother and stepfather. The CSW found that the family was doing well, and that the children happily showed her their "room, toys/games, computers setup, schoolwork." The CSW noted that "[t]he children and parents appear to have a healthy relationship, and have a good bond."

The Supplemental Report stated that father had retained Dr. Lynn Steinberg as a reunification specialist. Father stated that he was not participating in the court ordered monitored visits because they "[were] not helping the children at this time" and were " 'detrimental . . . and I don't want to see them hurt, so I had to make a moral and ethical decision by stopping the monitored visits and sticking with reunification therapy.' " He stated that he wanted to see the children only during therapeutic visits with Dr. Steinberg.

The CSW spoke to father after he and the children attended a two-hour session with Dr. Steinberg on April 1, 2022. Father told her that the session " 'was a disaster.' " M.B. " 'was screaming and crying during the meeting' " while A.B. "held his head and cried." According to father, Dr. Steinberg stated that further sessions would be useless unless the children were removed from mother's custody. After the April 1 session with Dr. Steinberg, father had no further visits with the children, and no further sessions with Dr. Steinberg. The Department

6

expressed "concern to the Court that as a result of the ongoing issues between the adults in their lives, the children present as having a hatred of their father that goes beyond what may or may not have occurred in the home when the children were younger." The Department stated that it had "facilitated visits for the father and the paternal relatives that are dysfunctional in the extreme."

The Department concluded that the children could safely remain in mother's custody based on her compliance with counseling and other services. Although father was "non-offending," the Department found that release to father posed "a threat to the children due to the children's ongoing vitriolic, anxiety-ridden and volatile feelings" toward father and paternal relatives. It further stated that it would be a detriment to the children to release them to father based on their threats of "self-harm, running away or acting out" if put in father's custody.

Dr. Steinberg also prepared a written report for the disposition hearing. She opined that the children were alienated from father and recommended they be placed with father for 90 days, during which time they have no contact with mother, and a four-day "family reunification intensive" therapy session. She further opined that the children were in "mortal danger" if they remained with mother and stepfather, but she saw no evidence of abuse by father. Dr. Steinberg described the oldest child as demonstrating "a pattern of communication that is sociopathic in nature, and if not checked . . . he could become sociopathic."

The court held a disposition hearing on May 10 and 11, 2022. The court admitted in evidence the Department's reports detailing the social workers' interactions with mother, father, stepfather, and the children, as well as the foster mother and

7

therapists. The court also heard testimony from social workers, father, and Dr. Steinberg. Dr. Steinberg's testimony was consistent with her written report: she recommended a 90-day transfer of custody to father, no contact with mother or stepfather during that time, and a four-day reunification therapy session. Dr. Steinberg also testified that, in her opinion, the children were in danger of abuse, or of growing up to become abusers themselves, if they remained with mother. Finally, Dr. Steinberg testified that she believed mother was coaching the children to resist contact with father. In response to questions from the court, Dr. Steinberg stated that her opinion would "not necessarily" change if she knew that mother and stepfather had completed domestic violence counseling. When asked if her recommendation would change if she knew "that the mother was actively trying to get the children to see their father," Dr. Steinberg replied, "My best answer is, I don't believe she is based on what I saw." Father's testimony mirrored Dr. Steinberg's; namely, that the children were in danger if left with mother and stepfather, and that they were at risk of physical and emotional harm which, according to father, "needs to be reversed by a period of placement with me, so I can work on these issues."

After all parties rested, the court heard argument. Father's counsel urged the court to adopt Dr. Steinberg's recommendations and to place the children with father. Counsel for mother argued that the children should remain in mother's home. The Department argued that mother and stepfather had taken responsibility for their conduct and had completed their court-ordered programs, and that the children were doing well at home and in school. The Department also argued that mother had been cooperative with facilitating the children's visits with

8

father and there was no evidence of parental alienation by mother. The Department argued that placement with father would cause the children emotional harm, noting that father himself elected to terminate his monitored visits on the ground that they were detrimental to the children.

In issuing its order, the court stated that it was "very concerned about Dr. Steinberg's testimony" and could not "give it much weight at all." The court expressed concern that Dr. Steinberg had spent only one two-hour session with the children and "she's able to make a determination that the oldest child is going to turn into [a] sociopath." The court noted that Dr. Steinberg "gave no evaluations, no diagnosis whatsoever," and made "a really draconian recommendation" that "really doesn't make any sense to me" – to take the children "from their mom where they're doing very well" and place them with father.

The court found the children to be dependents of the court and ordered them placed in the home of mother. The court further ordered the children removed from father, finding there was clear and convincing evidence that placing them with father would pose an emotional risk to the children. The court ordered monitored visits for father, joint legal custody, and that the parents continue reunification therapy but that "Dr. Steinberg not be a therapist in this case to the children or as a family reunification therapist" because her ideas were "out of norm and not appropriate."

The court ordered mother's counsel to prepare an exit order reflecting the court's orders, which was entered on May 13, 2022. Father filed a timely notice of appeal on May 20, 2022. We have jurisdiction pursuant to Welfare and Institutions Code section

9

395, subdivision (a)(1), and Code of Civil Procedure section 904.1, subdivision (a)(1).

## DISCUSSION

Father argues that the court abused its discretion when it removed the children from him and placed them in the custody of mother, and that substantial evidence does not support the court's findings.

Section 361, subdivision (d) permits removal from a parent with whom the child did not reside when the petition was filed only upon a finding by clear and convincing evidence of a current " 'substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child,' were the parent 'to live with the child or otherwise exercise the . . . right to physical custody.' " (*In re J.N.* (2021) 62 Cal.App.5th 767, 777.) We review a juvenile court's dispositional order removing a child for substantial evidence, " 'bearing in mind the heightened burden of proof.' " (*In re L.O.* (2021) 67 Cal.App.5th 227, 245.) A juvenile court's decision to terminate dependency jurisdiction and to issue a custody order is reviewed for abuse of discretion, and we may not disturb the trial court's order unless it " ' "exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318; *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) The court's focus in determining exit orders is the best interests of the child. (*In re Chantal S.* (1996) 13 Cal.4th 196, 206.)

The parties appear to dispute whether the court removed the children from father or instead made custody and visitation orders, awarding mother sole physical custody, as part of its decision to terminate dependency jurisdiction. The record makes

10

clear that the court did both. The record further demonstrates that the court's orders were not an abuse of discretion and are supported by substantial evidence.[4]

The court found "that it would be detrimental to the safety, protection, or physical or emotional well-being" of the children "to be returned or placed in the home or the care, custody, and control" of father, and accordingly found it "reasonable and necessary to remove the child[ren] from the father." Substantial evidence supports this finding. When the Department opened the case, the children had not seen father in over two years. After the children were placed in foster care father refused monitored visits with the children because he believed them " 'detrimental to [the children].' " Father participated in one two hour session of reunification therapy, which he himself deemed " 'a disaster,' " with the oldest child " 'screaming and crying' " while the middle child "held his head and cried." The Department concluded that "release to the father at disposition pose[d] a threat to the children due to the children's ongoing vitriolic, anxiety-ridden

---

[4] The Department urges us to dismiss father's appeal, arguing that his opening brief only addresses evidence favorable to his contentions, while ignoring evidence that supports the court's findings and order. The Department further argues that father "fails to make any attempt to show, with legal argument and citations to authorities, how the evidence does not sustain the challenged order." We agree with the Department that father has not addressed all of the evidence, both favorable and unfavorable, that was presented to the trial court. Nonetheless, we will exercise our discretion to consider father's appeal. "We do not find [father's] failure to summarize all of the evidence so egregious that we should deem [his] arguments forfeited." (*Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 391.)

and volatile feelings in the presence of their father and paternal relatives." As the court observed at the hearing, "[t]he problem with this case is that what happens during those visits, the children are what I call voting with their feet. They're not comfortable being in the presence of the father, and it may be because of the absence of him in . . . their life earlier before the case came here. But their reactions are detrimental to continue what we're doing here. It's not working."

Substantial evidence also supports the court's order to place the children in mother's home. The evidence demonstrated that the children were doing well in mother's care, that mother and stepfather had made progress in their therapies, and that mother supported father's efforts to have a relationship with the children. The children "stated they are happy to be [at] home with their mother and stepfather," and "continue[d] to insist they do not want to have contact with their father." The court noted that mother and stepfather "certainly took responsibility for what their actions were and stepped up much more quickly than many parents that we see here in dependency court. And as counsel indicated, [mother and stepfather] have practically finished the case plan, if not already done so in the time that the case has been here." The court properly found that awarding sole physical custody of the children to mother was in their best interests.

Father ignores this evidence and urges the court to consider evidence that mother may have engaged in parental alienation and that it was detrimental to place the children in mother's home given the history of domestic violence between mother and stepfather. Father also argues that he "had a plan" based on the recommendations of Dr. Steinberg. As to the latter, the court made clear that it considered Dr. Steinberg's testimony

12

and "cannot give it much weight at all." We do not reweigh the evidence or make findings of fact that differ from those made by the trial court. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) Our review is limited to determining, as we have, that substantial evidence supports the court's findings. Thus, the trial court's decision not to give credence to Dr. Steinberg's recommendation is one that we will not second-guess. Nor will we revisit the trial court's finding, based on its weighing of the evidence, that mother was not attempting to alienate the children from their father and that the children were safe in mother's home.

Father also argues that the trial court abused its discretion by "removing" the children from his custody, pointing to the Department's finding that father was "non-offending." The fact that father was non-offending is hardly dispositive. As noted, the evidence before the court was that the children were estranged from father when the Department opened the case, and that attempts at monitored visits and reunification had been unsuccessful. Father also ignores the preexisting family court order that gave father only monitored visitation, and the conclusion of the Department following its own investigation of father in September of 2021, that father's psychological problems affected his relationship with the children and his suitability as a custodial parent. We have already determined that substantial evidence supports the trial court's findings that the children were properly returned to mother's custody, and that the children would be threatened with serious emotional injury in the event they were put in father's custody. Given these findings, the trial court's exit order was neither arbitrary, capricious nor absurd, and therefore was not an abuse of the court's discretion.

13

## DISPOSITION

The court's May 11, 2022 dispositional order and May 13, 2022 juvenile custody order are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


HEIDEL, J.[*]


We concur:


EDMON, P. J.


EGERTON, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.